**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | |
|---|---|
| DR. EVAN S. DOBELLE<br><br>　　　　Plaintiff,<br><br>v.<br><br>JOHN ("JACK") FLYNN III, Individually,<br>KEVIN R. QUEENIN, Individually,<br>RICHARD M. FREELAND, Individually,<br>RUBIN & RUDMAN LLP,<br>JAMES B. COX,<br>ELIZABETH D. SCHEIBEL, Individually,<br>and<br>O'CONNOR & DREW, P.C.<br><br>　　　　Defendants. | CIVIL ACTION NO. 3:13-cv-30177<br>(KPN) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS**
**RUBIN & RUDMAN, LLP AND JAMES B. COX**

The Motion to Dismiss submitted by the Rubin & Rudman Defendants (Rubin & Rudman, LLP and Cox, collectively) seeks at this early stage to argue the merits of the case, challenging both the veracity of the allegations and the legal arguments behind them. Such arguments are wholly premature and inappropriate at this stage because Dr. Evan Dobelle, the former President of Westfield State University, has adequately stated causes of action as to the Rubin & Rudman Defendants. While those Defendants argue vociferously that the merits of the claims tilt in their favor, it is premature for this Court to even consider their arguments. Discovery has yet to be conducted, and due process, not to mention the Federal Rules of Civil Procedure and court precedent, dictates that -- after being denied his rights by the Defendants for too long -- Dr. Dobelle be given the opportunity to gather further support for his factual allegations. Those allegations cannot be debated now; they are presumed true.

The current action arises out of concerted efforts by the Rubin & Rudman Defendants, along with Co-Defendants John Flynn, III, Kevin R. Queenin, Richard M. Freeland, Elizabeth D. Scheibel, and O'Connor & Drew ("O&D"), to oust Dr. Dobelle from his role as president of Westfield State University ("WSU") in violation of both his contractual and constitutional due process rights.  Having accomplished their goal, the Rubin & Rudman Defendants now try to disclaim their role in the scheme to avoid liability for their actions.

In their motion, the Rubin & Rudman Defendants seek to dismiss all three claims against them.  This court must reject their motion.  As a threshold issue, the Rubin & Rudman Defendants have failed to satisfy the motion to dismiss standard, disregarding the presumption that Dr. Dobelle's facts must be taken as true, that all reasonable inferences must be drawn in favor of Dr. Dobelle, and that the motion may be granted only if Dr. Dobelle has *no* viable theory of recovery.  In addition, the Defendants attempt to argue the substance of Dr. Dobelle's claims, an effort which is entirely inappropriate in a motion to dismiss.

More specifically, Dr. Dobelle's defamation claim is sufficient to state a claim because Cox's defamatory statement was not undeniably true nor was it protected by privilege.  Second, Dr. Dobelle's claim for tortious interference with contractual relations is supported by well-pled facts detailing how the Rubin & Rudman Defendants improperly induced WSU to breach his contract.  Third, Dr. Dobelle's claim for civil conspiracy alleges sufficient facts detailing the common plan amongst the Defendants to have him removed from office, along with the concerted actions taken in furtherance of that common plan.  Finally, the Rubin & Rudman Defendants lack standing to assert any opinion or argument as to Dr. Dobelle's 42 U.S.C. § 1983 claims and thus those portions of Defendants' motion should be disregarded in their

entirety. For these reasons, Dr. Dobelle hereby respectfully submits this Opposition to the Motion to Dismiss filed by the Rubin & Rudman Defendants.

## BACKGROUND FACTS ALLEGED IN FIRST AMENDED COMPLAINT

As outside counsel to WSU at all times relevant to this dispute, the Rubin & Rudman Defendants were intimately involved in the scheme to remove Dr. Dobelle as president. A brief summary of their role in these events, as alleged in Dr. Dobelle's First Amended Complaint and which the court must accept as true, is provided below.

In 2010, WSU transferred $400,000 to the Westfield State Foundation (the "Foundation") in order to resolve the risk of a "going concern" problem. (Am. Compl. ¶ 73). This decision was "evaluated and sanctioned by a team of internal and external officials," including Rubin & Rudman. *Id.*

Also in 2010, an issue arose regarding Dr. Dobelle's "practice of charging personal expenses incurred in connection with University travel to University credit cards, and subsequently reimbursing the University for those charges." (Am. Compl. ¶ 76). Dr. Dobelle voluntarily returned his University credit cards and reported this conduct to the Board of Trustees (the "Board") and to WSU's counsel, Mark Peters of Rubin & Rudman. (Am. Compl. ¶ 78). Subsequently, Dr. Dobelle and the Board "commissioned University counsel Rubin & Rudman to conduct a comprehensive review of 'credit card use, expense reimbursements and like transactions in connection with certain international travel.'" (Am. Compl. ¶ 80). After a thorough review, Rubin & Rudman issued a report describing its benign findings, and the Board declined to discipline Dr. Dobelle. (Am. Compl. ¶ 82, 86).

Almost a full year after this matter was reviewed and resolved, in or around September 2012, WSU Board Chair Flynn held a secret meeting with other board members Queenin and Scheibel, and Peters of Rubin & Rudman in which they agreed to engage O'Connor & Drew to review Dr. Dobelle's expenditures. (Am. Compl. ¶ 102-03).  This review was largely duplicative of the comprehensive review conducted by Rubin & Rudman in 2010, which had not warranted any disciplinary actions against Dr. Dobelle.  (Am. Compl. ¶ 105).  Another secret meeting was held in December 2012, in which Board members Flynn, Queenin, and Scheibel, along with Peters, convened for the purpose of expanding the scope of the already unauthorized O&D review.  (Am. Compl. ¶¶ 129-31).

The results of this investigation were concealed from Dr. Dobelle until early 2013, when he finally received a draft of the report compiled by O&D.  (Am. Compl. ¶ 139).  Dr. Dobelle consulted with Rubin & Rudman's Cox, who was "critical of O&D's work, opining that the March draft report was not a 'professional product' due to the use of 'syntax, . . . clichés and unnecessary opinion." (Am. Compl. ¶ 140-41).  Cox assured Dr. Dobelle that he had encouraged O&D to correct all of these things and would work with O&D to create a more accurate and professional report.  (Am. Compl. ¶ 142).  The investigation was also concealed from the full Board.  It was not until July 2013, over nine months after the investigation began, and only after necessitated by a document request from the Massachusetts Inspector General, that the full Board was apprised of O&D's investigation and was given some of the O&D reports.  (Am. Compl. ¶¶ 150-54).

On September 20, 2013, Commissioner Freeland, Secretary of Education Matthew Malone, and other members of the Board of Higher Education held a public meeting with the WSU Board to discuss the O&D reports.  (Am. Compl. ¶ 242-43).  When state officials inquired

4

into the 2010 transfer of funds from WSU to the Foundation, Cox indicated that Dr. Dobelle had unilaterally authorized the transfer. (Am. Compl. ¶ 246). Cox knowingly concealed the extensive deliberations that preceded the transfer, which had included WSU administrators, Board members, independent auditors, and of course his own firm, Rubin & Rudman. (Am. Compl. ¶¶ 245-47). As reported by *The Boston Globe,* the exchange occurred as follows:

  a. "'How did it happen?'" Freeland asked Jack Flynn, chairman of the Westfield State board of trustees.
  b. "'It's a question I don't have an answer to now,'" Flynn said.
  c. "[Cox] explained that Dobelle had authority to spend up to $500,000 without board approval."
  d. "'It's a very big number for presidential discretion,'" said Freeland, adding that as a state commissioner he can only authorize spending up to $5,000.

(Am. Compl. 250). Prior to the meeting, Cox had been responding to a related inquiry from the Massachusetts Board of Higher Education, had consulted with his firm about the circumstances giving rise to the transfer, and had drafted a memorandum detailing the relevant facts. (Am. Compl. 252-54). He was thus well-aware of the extensive deliberation leading up to the ultimate approval of that transfer. Cox made his statement knowing it was false, hoping to avoid potentially embarrassing admissions that would have diminished Rubin & Rudman's stature in the community. (Am. Compl. ¶ 255).

## **ARGUMENT**

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual allegations contained in the complaint and draw all

reasonable inferences in favor of the non-moving party. *See Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir. 2000). The court can grant a motion to dismiss only if, on the facts alleged, plaintiff has no viable theory of recovery. *See id.* The Rubin & Rudman Defendants have fallen woefully short of this standard.

**A.     Plaintiff's Defamation Claims Should Not Be Dismissed Because Defendants' Statements Were False and Were Not Protected by Privilege.**

   1.     <u>Cox's statements were clearly susceptible of defamatory meaning.</u>

The Rubin & Rudman Defendants first argue that Dr. Dobelle has not stated a claim for defamation because Cox's statement was truthful. To prevail on their motion, the Rubin & Rudman Defendants must show that, presuming Dr. Dobelle's alleged facts as true, the statement was not "reasonably susceptible of a defamatory meaning." *See Stanton v. Metro Corp.,* 438 F.3d 119, 124-25 (1st Cir. 2006) (quoting *Amrak Prods., Inc. v. Morton,* 410 F.3d 69, 72 (1st Cir. 2005)). A statement is reasonably susceptible of a defamatory meaning if it "would tend to injure the plaintiff's reputation, or 'hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community.'" *See Damon v. Moore,* 520 F.3d 98, 103 (1st Cir. 2008) (quoting *Amrak,* 410 F.3d at 72). If a communication is "susceptible of both a defamatory and non-defamatory meaning, a question of fact exists for the jury." *See id.* (quoting *Jones v. Taibbi,* 400 Mass. 786, 792 (1987)). Taking all well-pled facts as true and drawing all reasonable inferences in Dr. Dobelle's favor, the Rubin & Rudman Defendants plainly cannot meet their burden.

Cox's statement was reasonably susceptible of a defamatory meaning because it indicated that Dr. Dobelle unilaterally authorized the transfer of funds to the Foundation without

justification, when in fact the transfer was authorized after extensive discussions with and approval from WSU administrators, Board members, independent auditors, and the Rubin & Rudman Defendants themselves.  As reported by *The Boston Globe,* in reference to the Foundation transfer, Commissioner Freeland asked an open-ended question: "How did it happen?"  (Am. Compl. ¶ 248).  Cox's response, that Dr. Dobelle "had authority to spend up to $500,000 without board approval," (Am. Compl. ¶ 248), damaged Dr. Dobelle's reputation and subjected him to the scorn and contempt of the community by falsely indicating that Dr. Dobelle was solely responsible for the maligned $400,000 transfer of public funds to the Foundation, concealing the involvement of other WSU administrators, Board members, independent auditors, and legal counsel.  *See Scholz v. Boston Herald, Inc.,* No. SUCV201001010, 2013 WL 4081413 (Mass. Super. Mar. 29, 2013) (articles insinuating plaintiff was to blame for band-mate's suicide were reasonably susceptible of defamatory meaning).

Moreover, Freeland's response to Cox's statement, that $500,000 was "a very big number for presidential discretion," demonstrates that Cox's statement was false, as the Foundation transfer was undeniably *not* a result of mere "presidential discretion."  *See Masson v. New Yorker Magazine,* 501 U.S. 496, 517 (1991) (statements are false if they "would have a different effect on the mind of the reader from that which the pleaded truth would have produced").  That Dr. Dobelle was permitted to unilaterally authorize such transfers does not make the statement true because, as the Rubin & Rudman Defendants were well-aware, such was not the case here.  Taking all of the allegations as true, Cox's statement was false and reasonably susceptible of a defamatory meaning, and thus plainly supports a cause of action for defamation.

The Rubin & Rudman Defendants' next argument, that Cox's statement carried no additional "defamatory sting," is irrelevant.  (Defs.' Mot. Dismiss 10).  To survive a motion to

7

dismiss, the statement need not carry an *additional* "defamatory sting"-- it need only be reasonably susceptible of a defamatory meaning. The "additional defamatory sting" element that the Rubin & Rudman Defendants seek to impose is only required where defendants invoke the "fair report" privilege, which is inapplicable to this case.[1] The allegations in Dr. Dobelle's Amended Complaint, presumed true, establish that Cox's statement was false and reasonably susceptible of a defamatory meaning because the facts Cox concealed paint an entirely different and less inflammatory story of the Foundation transfer. The Rubin & Rudman Defendants have failed to meet the required burden to support their Motion to Dismiss. *See Stanton,* 438 F.3d at 124-25 (if statement may have defamatory meaning, "then the ultimate issue of whether the [statement] is defamatory is not the court's to decide . . . a question of fact exists for the jury") (internal citations omitted).

    2.    <u>Cox's statement was not privileged because it was made at a public meeting, independent of any proposed adjudicatory proceedings.</u>

In a feeble attempt to hide behind privilege, the Rubin & Rudman Defendants cite numerous cases and secondary sources indicating that statements made during adjudicatory

---

[1] Two cases cited by the Rubin & Rudman Defendants invoke the "additional defamatory sting" language in discussions of the "fair report" privilege, and are thus inapposite to the present case. *See Howell v. Enterprise Publishing Co., LLC,* 455 Mass. App. Ct. 280, 297 (2010); *Jones v. Taibbi,* 400 Mass. 786, 795-96 (1987). The third case cited by the Rubin & Rudman Defendants simply quotes *Howell* out of context, stating defendant's comments carried no "additional defamatory sting" when the real reason for summary judgment was that defendant's statement simply was not defamatory. *See* Vranos v. Skinner, 77 Mass. App. Ct. 280, 297 (2010) (granting summary judgment where defendant told employees they would "understand" defendant's decision to suspend plaintiff if they knew what he knew). In any event, the argument would fail because Dr. Dobelle has made a plausible showing that Cox's statement does carry an "additional defamatory sting." Contrary to the assertion that Dr. Dobelle's reputational harm "would not have been lessened by a statement that other people also participated in this alleged wrongdoing," (Defs.' Mot. Dismiss 10), the transparent attempt to hold Dr. Dobelle exclusively accountable for a group decision - a group including the Rubin & Rudman Defendants - had the intended effect of further denigrating Dr. Dobelle in the court of public opinion. For instance, shortly after the meeting, The Boston Globe published an article titled "Give Dobelle the Boot," calling the $400,000 transfer a "firing offense[]." Adrian Walker, *Give Dobelle the Boot*, THE BOSTON GLOBE, October 16, 2013 (available online at http://www.bostonglobe.com/metro/2013/10/15/westfield-state-evan-dobelle-could-fired-early-wednesday-and-should/XoMrTLW0m8RFjOerqvvpSK/story.html) (last accessed Jan. 9, 2014).

proceedings are privileged. As a matter of law, a claim cannot be dismissed on the grounds of privilege unless it is "completely clear" from the face of the complaint that the privilege applies. *See Kipp v. Kueker,* 7 Mass. App. Ct. 206, 210 (1979) (denying motion to dismiss on basis of privilege where "from the face of the pleading it is not completely clear that the alleged defamatory matter was made in preparation for, or preliminary to, a proposed judicial proceeding"); *Meltzer v. Grant,* 193 F. Supp. 2d 373, 381 (D. Mass. 2002) ("[A] motion to dismiss on the grounds that the acts complained of were privileged will only succeed when the entitlement to the privilege is demonstrated by the complaint itself, taking all allegations of the complaint as true and drawing all reasonable inferences in favor of the plaintiffs."). Where there are unresolved issues of fact affecting the application of the privilege, "the matter is not properly resolved on a motion to dismiss." *See Meltzer,* 193 F. Supp. 2d at 381 (denying motion to dismiss because questions of fact remained whether defamatory letter was drafted in context of litigation, where privilege would apply).

Here, based on the facts alleged in Dr. Dobelle's Amended Complaint and drawing all reasonable inferences in his favor, it is not "completely clear" that the Rubin & Rudman Defendants' claim of privilege attaches to Cox's statements. The Rubin & Rudman Defendants first argue that Cox's statement was privileged because it "was made in the course of Cox's representation of his client in a governmental proceeding investigating alleged irregularities involving the university." (Defs.' Mot. Dismiss 10). There is no broad privilege covering statements made by an attorney while representing his client. An attorney's statements are privileged *only* when made in the context of pending or contemplated litigation. *See Burke v. Town of Walpole,* 405 F.3d 66, 94 (1st Cir. 2005) (absolute privilege applies only to statements made in a "proposed judicial proceeding"). Neither of the cases cited by the Rubin & Rudman

9

Defendants supports a broader privilege protecting statements made by attorneys outside of litigation. *See Blanchette v. Cataldo,* 734 F.2d 869, 877 (1st Cir. 1984) (statements made in connection with settlement negotiations for pending litigation were protected by privilege); *Sriberg v. Raymond,* 370 Mass. 105 (1976) (statements made in letter explicitly threatening litigation were protected by privilege). Cox's statement was made at a public meeting, before any litigation was instituted or contemplated, and not in an executive session where a privilege may be invoked. Thus the Rubin & Rudman Defendants have not clearly established that a privilege should apply. *See Smith v. Suburban Restaurants, Inc.,* 374 Mass. 528, 531 (1978) (letter written by defendant's attorney, sent to plaintiff and police, banning plaintiff from restaurant was not privileged because there was "no indication that the attorney seriously contemplated a judicial proceeding").

The Rubin & Rudman Defendants also assert that Cox's statement was privileged because "it was made in the context of a governmental investigative proceeding." (Defs.' Mot. Dismiss 11). Defendants offer no case law suggesting the privilege extends to governmental investigative proceedings, because it does not. *See Oberg v. City of Taunton,* No. 12-cv-10264, 2013 WL 5347437 (D. Mass. Sept. 25, 2013) (rejecting motion to dismiss defamation claims based on statements made at termination hearing held before City Council); *Burke v. Walpole,* 405 F.3d 66, 94 (1st Cir. 2005) (statements to police or prosecutors not covered by absolute privilege unless "made in the context of a proposed judicial proceeding"); *Mulgrew v. Taunton,* 410 Mass. 631, 635 n.6 (1991) (noting that the Supreme Judicial Court "has recognized the existence of an absolute privilege in relatively few circumstances"). Defendants rely on sections of the *Restatement (Second) of Torts* finding privilege for statements made during "judicial proceedings" and "legislative proceedings," but notably *not* finding any privilege for

10

statements made in "governmental investigative proceedings," or, more accurately for purposes of this case, public meetings. §§ 587, 588A, 590A. The defendants also erroneously cite to the *Restatement (Second) of Torts,* § 585, cmt. [b], [c], which extends the privilege protecting judicial officers to cover officers of the executive and legislative branches acting in a "judicial function." This section has no bearing on Cox's statements, as Cox was not acting as a "judicial officer," nor would it apply to the public meeting, which was not a "judicial function." Further, the Rubin & Rudman Defendants' reliance on the *Restatement* in arguing that privilege exists so that "full disclosure not be hampered by fear of private suits for defamation," (Defs.' Mot. Dismiss 11), is undermined by a full reading of the quoted comment, which begins by explaining the interest to be protected is "[t]he final judgment of the tribunal." *Restatement (Second) of Torts,* § 588, cmt. [a].

Because the Rubin & Rudman Defendants have not clearly established that there is a privilege protecting Cox's statements, their motion must fail.

**B.     Dr. Dobelle Has Pled Adequate Facts Establishing Defendants Induced WSU to Breach His Contract Through Improper Motives or Means.**

The Rubin & Rudman Defendants contend that Dr. Dobelle's Amended Complaint does not allege facts suggesting they induced WSU to breach Dr. Dobelle's contract. (Defs.' Mot. Dismiss 12). Dr. Dobelle need only plead sufficient facts to state a claim "that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Contrary to Defendants' assertion, Dr. Dobelle's Amended Complaint is replete with facts evidencing that the Rubin & Rudman Defendants induced WSU to breach Dr. Dobelle's contract by, among other things, assisting O&D in conducting an unauthorized investigation into Dr. Dobelle's expenditures and

producing an inaccurate report to the Board, participating in "illegal and unsanctioned private meetings" relating to the O&D investigation, "leaking information about Dr. Dobelle to the press," contributing to the "media war condemning Dr. Dobelle's fiscal responsibility and generally tarnishing his reputation," "making false statements regarding Dr. Dobelle's actions as President during a meeting with Commissioner Freeland," and contributing to the decision "denying him his contractual rights to defense and indemnification."  (Am. Compl. ¶¶ 103, 105, 129, 141-44, 211).  Based on these allegations and the supporting facts asserted in the Amended Complaint, there can be no question that Dr. Dobelle has made a plausible claim that the Rubin & Rudman Defendants induced WSU to breach his employment contract.

More specifically, defamatory remarks, which constitute a significant portion of the allegations against the Rubin & Rudman Defendants, often serve as the basis for claims of tortious interference.  *See Cavicchi v. Koski*, 67 Mass. App. Ct. 654, 658 (2006) ("Improper means include violation of a statute or common-law precept, e.g., by means of threats, misrepresentation, or defamation.") (citing *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 817 (1990)); *Desrochers v. Tiax, LLC*, No. 024626, 2003 WL 21246150, at *7 n.6 (Mass. Super. May 1, 2003) ("If [plaintiff] proves that his supervisors defamed him, such defamation can also be considered as evidence of actual malice on Desrochers' tortious interference claims.").  In short, Dr. Dobelle has pled extensive facts detailing the Rubin & Rudman Defendants' role in inducing WSU to breach its contract with Dr. Dobelle.

The Rubin & Rudman Defendants' further argue that they may not be held liable for tortious interference for rendering legal advice to WSU.  (Defs.' Mot. Dismiss 12).  In support, the Rubin & Rudman Defendants state that an attorney's duty of care extends only to her clients.  While that may be true, the Rubin & Rudman Defendants provide no explanation as to how the

12

proposition affects Dr. Dobelle's claim for tortious interference,[2] and cite a host of cases that do not involve claims for tortious interference. Moreover, and contrary to Defendants' insinuation, Massachusetts courts have found attorneys may be liable for tortious interference with contractual relations for legal advice rendered. *See Kurker v. Hill,* 44 Mass. App. Ct. 184, 192 (1998) (plaintiff stated cause of action against defendant attorneys for tortious interference with business relations where legal advice was allegedly tainted by dual-representation and conspiracy); *Cacciola v. Nellhaus*, 49 Mass. App. Ct. 746, 755 (2000) (tortious interference claim survived motion to dismiss where defendant attorney's legal advice violated partnership agreement and fiduciary duties, leading directly to plaintiff's loss of economic opportunity).

While it is true that "truthful information or honest advice" would not support a claim for tortious interference, (Defs.' Mot. Dismiss 13), such was not the tenor of the advice rendered here by the Defendants. Dr. Dobelle has pled extensive facts illustrating that the Rubin & Rudman Defendants acted tortiously to have him terminated, employing both improper motives and means. *See Nat'l Ass'n of Gov't Emps. v. Mulligan,* 854 F. Supp. 2d 126, 130 (D. Mass. 2012) (plaintiff successfully pled improper motive and means by alleging "secretive participation in a patently unlawful scheme"); *Callahan v. First Congregational Church of Haverhill,* No. 012974H, 2001 WL 1839719 (Mass. Super. Dec. 5, 2001) ("Given the standard of review at this stage, plaintiff has adequately stated a claim for unlawful interference through improper means because he alleges the defendants knowingly made false statements and took actions exclusively for the purpose of destroying [plaintiff's] career."). Because Dr. Dobelle has alleged facts

---

[2] To state a claim for intentional interference with contractual relations, a plaintiff must prove that "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *See Draghetti v. Chmielewski*, 416 Mass. 808, 816 (1994). None of these elements, expressly, impliedly, or as interpreted by case law, are affected by the duty of care owed by an attorney to her client.

satisfying all four elements of a claim for tortious interference with contractual relations, the Motion to Dismiss should be denied.

**C.     Dr. Dobelle Has Pled Ample Facts Suggesting Defendants Took Concerted Actions Against Him Pursuant to a Common Plan to Have Him Terminated.**

Glossing over the extensive factual allegations levied against them in Dr. Dobelle's Amended Complaint, the Rubin & Rudman Defendants argue there are no well-pleaded facts supporting Dr. Dobelle's claim for civil conspiracy. Again, Dr. Dobelle need only plead facts establishing a plausible claim for relief. Here, Dr. Dobelle alleged that the Rubin & Rudman Defendants acted pursuant to a common plan with Co-Defendants Flynn, Queenin, Scheibel, and O&D to remove him from office, and proceeded together pursuant to the plan by:

> [C]ommissioning and conducting an unauthorized review by O&D in secret and against university by-laws, hiding the review and its results from the full Board, circumventing state Open Meeting laws, failing to seek Board ratification for the engagement of O&D and the subsequent expansion of that review, denying Dr. Dobelle any form of fair process, leaking preliminary reports containing unsubstantiated findings to the press and state regulators, accusing Dr. Dobelle of financial improprieties that had already been addressed by the Board, making false statements concerning Dr. Dobelle's reputation during a meeting with Commissioner Freeland - which statements were later reported by the press.

(Am. Compl. ¶ 264).

Thereafter, the Rubin & Rudman Defendants conspired with Co-Defendants Flynn, Queenin, Scheibel, and Freeland to constructively terminate Dr. Dobelle by "denying Dr. Dobelle his contractually-protected rights in exchange for the release of university funding,

placing Dr. Dobelle on administrative leave in violation of his contract, and failing to defend or indemnify him in violation of his contractual rights." (Am. Compl. ¶ 264). The detailed allegations clearly establish Dr. Dobelle's plausible claim for relief under civil conspiracy, defeating the Defendants' motion. *See Brockton Power LLC v. City of Brockton,* No. 12-cv-11047, 2013 WL 2407220, at *21 (D. Mass. May 30, 2013) (denying motion to dismiss where plaintiff adequately pled tortious acts underlying civil conspiracy claim and explicitly alleged agreement among defendants to commit those acts); *Heinrich ex rel. Heinrich v. Sweet,* 49 F. Supp. 2d 27, 45 (D. Mass. 1999) (denying motion to dismiss where allegations of "affirmative conduct" and that "the scheme was perpetrated knowingly and purposely" was sufficient to notify defendants of the "time, place, and content of the alleged conspiracy").

Further, the comprehensive allegations concerning the Rubin & Rudman Defendants' critical role in this scheme do not consist of mere "conclusory assertions." (Defs.' Mot. Dismiss 14). Dr. Dobelle asserts numerous, specific facts regarding their involvement, including:

- Rubin & Rudman's attendance at secret meetings held in September and December of 2012 to first institute, and later expand, an unauthorized investigation against Dr. Dobelle (Am. Compl. ¶¶ 103, 129).
- Cox's role promulgating O&D's report that, as Cox acknowledged, was not a "professional product." (Am. Compl. ¶¶ 140-42).
- Cox's assistance hiding the O&D investigation and report from the full Board, and withholding the most current version of the O&D report from the Board. (Am. Compl. ¶¶ 152-54).

- Cox's fueling the media backlash against Dr. Dobelle through "misleading characterizations made by University counsel Cox and board Members Flynn, Queenin and Scheibel in a public meeting." (Am. Compl. ¶¶ 169, 241-61).

These factual assertions extend far beyond mere conclusory allegations, readily satisfying the liberal pleading standards for purposes of a motion to dismiss. *See Koufos v. U.S. Bank, N.A.,* 939 F. Supp. 2d 40, 51-52 (D. Mass. 2013) (denying motion to dismiss where plaintiff "identifie[d]" defendants' tortious conduct and alleged that "there was an agreement . . . to perform these acts"); *Kurker v. Hill,* 44 Mass. App. Ct. 184, 189 (1998) (complaint stated claim for civil conspiracy against attorney defendants where plaintiff alleged attorneys "knowingly provided substantial assistance" to commission of torts by co-defendants) (citing *Restatement (Second) of Torts* § 876 (1979)). Accordingly, the motion to dismiss this claim must be denied.

**D.     The Rubin & Rudman Defendants' Argument Regarding 42 U.S.C. § 1983 Should Be Disregarded in Its Entirety Because Defendants Lack Standing.**

The Rubin & Rudman Defendants argue that the 42 U.S.C. § 1983 claims brought by Dr. Dobelle against defendants Flynn, Queenin, Scheibel, and Freeland should be dismissed, and that the Court should subsequently decline to exercise supplemental jurisdiction over the state law claims. The Rubin & Rudman Defendants lack standing to make this argument because Dr. Dobelle did not assert Section 1983 claims against them, and thus those portions of their Motion should be disregarded in their entirety. *See Dover Ltd. V. A.B. Watley, Inc.,* No. -4-cv-7366, 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) (defendant lacked standing to seek dismissal for causes of action in which he was not named); *Standard Chlorine of Del., Inc. v. Sinibaldi,* No. 91-cv-188, 1994 WL 796603, at *6 n.5 (D. Del. Dec. 8, 1994) ("[Moving party] is not

16

named as a defendant in count VI and accordingly has no standing to move for its dismissal or for summary judgment on the count.").

## CONCLUSION

For these reasons, the Rubin & Rudman Defendants have wholly failed to meet their burden under Fed. R. Civ. P. 12(b)(6). Accordingly, Dr. Dobelle respectfully requests that the Court deny the Rubin & Rudman Defendants' Motion to Dismiss in its entirety.

                PLAINTIFF,
                DR. EVAN S. DOBELLE


                By   /s/ Daniel A. Schwartz
                   Katherine M. Romel (BBO #680186)
                   Ross H. Garber (*pro hac vice forthcoming*)
                   Daniel A. Schwartz (*pro hac vice*)
                   Sara J. Goldfarb (*pro hac vice*)
                   For Shipman & Goodwin LLP
                   One Constitution Plaza
                   Hartford, Connecticut 06103
                   Tel.: (860) 251-5000
                   Fax: (860) 251-5218
                   Its Attorneys


                By   /s/ Darrell Mook
                   Darrell Mook, BBO# 546754
                   Donovan Hatem LLP
                   53 State Street
                   Boston, MA 02109
                   Tel: (617) 406-4500
                   Fax: (617) 406-4501
                   Its Attorneys

**CERTIFICATE OF SERVICE**

 In accordance with Local Rule 5.2(b), I, Daniel A Schwartz, hereby certify that this document filed through the ECF system on January 13, 2014 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

              /s/ Daniel A Schwartz
              Daniel A Schwartz, Esq.